IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARRION BRANSCOMB,

     Plaintiff,

        v.                            CASE NO.  23-3159-JWL

(FNU) TROLL, et al.,

     Defendants.

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Darrion Branscomb is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I.  Nature of the Matter before the Court

Plaintiff, a federal prisoner, brings this pro se civil rights action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Although Plaintiff is currently housed at the Rochester Federal Medical Center in Rochester, Minnesota, his claims arose during his incarceration at USP-Leavenworth in Leavenworth, Kansas ("USPL").  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff claims medical negligence, alleging that in January of 2021, while housed at USPL, Nurse Hannah came to visit him in the SHU "and ignored every complaint over medical needs along with Nurse Dunham."  (Doc. 1, at 9.)  Plaintiff claims that CO Lock witnessed Plaintiff falling in the middle of the dayroom and ignored Plaintiff's chest pain complaints.  *Id*. Plaintiff claims that CO Lock and CO Long witnessed Plaintiff falling numerous times and ignored Plaintiff's request for medical needs.  *Id*.  Plaintiff claims that CO Allen stated that

1

Plaintiff was "bullshitting" when Plaintiff said he needed medical care over chest pains.  *Id*. Plaintiff claims that Captain Keller beat Plaintiff's chest to the point where Plaintiff cried, and told Plaintiff to stop acting and to submit a urine test because Keller believed Plaintiff was "dirty."  *Id*. at 10.  Plaintiff claims that his urine tests were never dirty.  *Id*.  Plaintiff claims Cpt. Keller would not let Plaintiff go to medical when Plaintiff would fall on the floor in the dayroom.

Plaintiff claims that he spoke to Warden Hudson about his medical issues, and the Warden referred Plaintiff to J. Revier, the Health Administrator.  *Id*.  Plaintiff alleges that Revier said that Plaintiff did not need medical attention and that Plaintiff needed to stop wasting medical staff's attention.  *Id*.  Plaintiff claims that Health Administrator Viscon also stated that there was nothing wrong with Plaintiff and that he needed to wait for blood tests to come back. *Id*.  Plaintiff claims he should have been sent to a specialist when he first started having symptoms in January 2021.  *Id*.

Plaintiff attaches his Motion for Compassionate Release filed in his federal criminal case. (Doc. 1–1.)  The motion addresses Plaintiff's medical care at USPL and provides that:

> In January of 2021, Mr. Branscomb began experiencing symptoms so bizarre that he told providers he believed he had a mild stroke. *See Exhibit E,* BOP 2021 Medical Records p. 1-2. He had a sudden onset of double vision, weakness in both hands, and weakness on his right side resulting in worsening his already existing drop foot. *Id.* A neurological exam performed on Mr. Branscomb in early March showed diminished strength on his right side, upper extremity weakness and reduced grip strength. *Id.* at p. 3. Due to a remaining bullet lodged in his neck from a gunshot wound, he was unable to have an MRI completed. *Id.* at p. 4.  A CT of his head showed no evidence to account for these symptoms. *Id.*
>
> Over the next few weeks, these symptoms persisted and in early May, Mr. Branscomb began feeling unable to breathe, a sore/swollen throat and trouble eating or drinking because the liquid would come out his nose. *Id.* at p. 5-9. At this time, he was

so weak that he had to be "wheelchaired in by another inmate" for his appointment. *Id.* at p. 7-9. On May 4th, Mr. Branscomb was found in a lethargic state in his cell and required IV hydration because he could not swallow. *Id.* The following day, he was brought to health services because he was unable to walk to the toilet and has [sic] subsequently urinated on himself. *Id.* at p. 10-11. Despite being in a wheelchair, he was unable to sit upright or lift his feet onto the footrest of the chair. *Id.* An administrative note was entered that shows Mr. Branscomb had lost 26 pounds since January. *Id.* at p. 12. He underwent a nerve conduction study and a consultation with an Ear, Nose and Throat Doctor, neither of which reported any acute findings. *Id.* at p. 13-19.

Mr. Branscomb continued to suffer episodes where he felt like he could not breathe and was admitted to St. Luke's Hospital on June 16th because his pulse oxygen was below 90%. *Id.* at p. 20. Once admitted, he was diagnosed with a mediastinal mass compressing the SVC, histoplasmosis and malnutrition. *Id.* at p. 21-25. Histoplasmosis is an infection cause [sic] by a fungus that lives in the environment.[] It is usually found in soil that contains "large amounts of bird or bat droppings" and mainly lives in "areas around the Ohio and Mississippi River valleys."[] On June 26th, Mr. Branscomb was also diagnosed with myasthenia gravis which is an autoimmune and neuromuscular disease "that causes weakness in the skeletal muscles."[]

*Id.* at 4–6 (internal footnotes and citations omitted).   The motion states that Plaintiff was transferred to FMC Rochester in early November of 2021.  *Id.* at 6.

Plaintiff names as defendants:  (fnu) Troll, RN; (fnu) Dunham, RN; Hannah (lnu), RN; (fnu) Lock, Correctional Officer; (fnu) Long, Correctional Officer; (fnu) Allen, Correctional Officer; (fnu) Keller, Captain; (fnu) Auelupp, Medical Doctor; (fnu) Clark, Medical Doctor; J. Revier, Health Administrator; and (fnu) Viscon, Health Administrator.  Plaintiff seeks $15 million in punitive damages, and $10 million in actual damages for deficiencies and pain and suffering.  (Doc. 1, at 9.)   Plaintiff also states that he has "a tort claim in the courts but ha[s] not received a response."  *Id*. at 13.  However, Plaintiff marks "no" to the question on his Complaint

asking if he has filed other lawsuits in state or federal court dealing with the same facts involved in this action.  *Id*. at 14.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court,

a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Statute of Limitations

"It is well-settled . . . that 'state law determines the appropriate statute of limitations and accompanying tolling provisions' for § 1983 and *Bivens* claims." *Herrera-Zamora v. Crosby*, 769 F. App'x 670, 671 (10th Cir. 2019) (unpublished) (citing *Fratus v. DeLand*, 49 F.3d 673,

675 (10th Cir. 1995) (§ 1983); *Indus. Constr. Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (*Bivens*)).  "Federal law only controls the issue of when the federal cause of action accrued." *Id.* (citing *Fratus*, 49 F.3d at 675).

 "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).  "A *Bivens* action is subject to the same statute of limitations as a 42 U.S.C. § 1983 suit." *Roberts v. Barreras*, 109 F. App'x 224, n.1 (10th Cir. 2004) (citation omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted).  In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id.* at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

The Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic.  *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021).  The tolling or suspension is set forth in Kansas

Supreme Court ("KSC") Administrative Order 2020-PR-016, as amended by KSC Administrative Order 2020-PR-32. KSC Administrative Order 2021-PR-020 reinstated the statute of limitations effective April 15, 2021, and instructs that "for a deadline or time limitation that did not begin to run'" because of the earlier suspension, "'a person shall have the full period provided by law to comply with the deadline or time limitation.'" *See id.*

Plaintiff alleges in his Complaint that he was denied proper medical care at USPL in January 2021. Plaintiff filed his Complaint on July 5, 2023. Even considering the KSC's suspension or tolling, Plaintiff's claims accruing in January 2021 are still untimely. His limitation period for these claims did not begin to run until April 15, 2021, due to the suspension. Therefore, he had two years from April 15, 2021, to file these claims. It thus appears that any events or acts of Defendants in January 2021 took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed). Plaintiff has not alleged facts suggesting that he would be entitled to additional statutory or equitable tolling.

However, Plaintiff was not transferred to FMC-Rochester until early November of 2021. Thus, it is possible that some of Plaintiff's claims may have accrued within two years of the filing of his Complaint on July 5, 2023. Plaintiff should clarify if he was denied proper medical care at USPL from around June 27, 2021[1] until his transfer in November 2021.[2]

---

[1] The Court notes that although Plaintiff's Complaint was not filed until July 5, 2023, he signed his Complaint on June 27, 2023. (Doc. 1, at 16.)

[2] Plaintiff also filed a claim for property damage or loss, indicating that he complained to staff about black mold and fungus in the showers and cells at USPL. (Doc. 1–1, at 32.) The claim suggests that this may have caused some of his medical issues. The claim lists the date of the incident as August 11, 2020. *Id.* Plaintiff does not mention a claim regarding fungus or black mold in his Complaint.

### 2. Personal Participation

Plaintiff names Dr. Auelupp and Dr. Clark as defendants, but fails to mention them in the body of his Complaint.  Plaintiff has failed to allege how the doctors personally participated in the deprivation of his constitutional rights.   An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights. Plaintiff should show good cause why his claims against Dr. Auelupp and Dr. Clark should not be dismissed.

### 3. Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm

requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Lucas*, 58 F.4th at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

Plaintiff's allegations show that he received medical care that was more than the functional equivalent of a compete denial of care. His Complaint shows that while he was at USPL: he received blood tests; he received a neurological exam in early March; he received a CT of his head; he had a medical appointment in May; he was provided with a wheelchair; on May 4th he was given IV hydration because he could not swallow; on May 5th he was brought to health services; Plaintiff underwent a nerve conduction study and a consultation with an Ear, Nose and Throat Doctor, neither of which reported any acute findings; Plaintiff was admitted to St. Luke's Hospital on June 16th and was diagnosed with a mediastinal mass compressing the SVC, histoplasmosis and malnutrition; and on June 26th, he was also diagnosed with myasthenia gravis. Plaintiff also had pre-existing drop foot and was unable to have an MRI completed due

to a remaining bullet lodged in his neck from a gunshot wound. The response to Plaintiff's

August 10, 2021 grievance provides that:

> Records indicate reported weakness and vision changes to Health
> Services in February 2021.  Since that encounter, consultations
> with optometry, neurology, otolaryngology, and physical therapy
> were all completed. Multiple diagnostic studies have also been
> completed, including x-rays, CT/MRI scans, lab work, swallow
> studies, and nerve conduction studies. All recommendations made
> by outside specialists have been ordered and/ or completed by your
> local medical providers.  During a hospitalization in June 2021,
> you received a diagnosis of myasthenia gravis and were placed on
> a treatment regimen by the outside neurologist. This treatment
> regimen has been continued since your return to the institution.
> There is no evidence of inadequate medical treatment having been
> provided to you.

(Doc. 1–1, at 27.)

Plaintiff has failed to show that any defendant disregarded an excessive risk to his health

or safety or that they were both aware of facts from which the inference could be drawn that a

substantial risk of serious harm existed, and also drew the inference.  His own allegations

acknowledge that the onset of his symptoms in January 2021 was "bizarre."

Plaintiff states that he is bringing a claim for medical negligence.  (Doc. 1, at 4.)

However, negligence is insufficient to state a constitutional violation.  The "negligent failure to

provide adequate medical care, even one constituting medical malpractice, does not give rise to a

constitutional violation."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)

(citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).  Plaintiff's claims suggest, at most,

negligence and are subject to dismissal.

**IV.  Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why Plaintiff's Complaint should not be

dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete

and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (23-3159-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **September 5, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **September 5, 2023**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1331 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated August 7, 2023, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

13