**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DARRION BRANSCOMB,**

**Plaintiff,**

**v.** **CASE NO. 23-3159-JWL**

**(FNU) TROLL, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff, a federal prisoner, brings this pro se civil rights action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Although Plaintiff is currently housed at the Rochester Federal Medical Center in Rochester, Minnesota, his claims arose during his incarceration at USP-Leavenworth in Leavenworth, Kansas ("USPL"). The Court granted Plaintiff leave to proceed in forma pauperis. On August 7, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 9) ("MOSC") granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.

Plaintiff filed an Amended Complaint (Doc. 10), and on September 7, 2023, the Court entered a Memorandum and Order (Doc. 11) ("M&O") finding that the proper processing of Plaintiff's claims in his Amended Complaint cannot be achieved without additional information from appropriate officials of USPL. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the USPL officials to prepare and file a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."

(Doc. 11, at 4.) After the *Martinez* Report (Docs. 13, 14) (the "Report") was filed, the Court screened Plaintiff's Amended Complaint and entered a Memorandum and Order to Show Cause (Doc. 17) ("MOSC II") directing Plaintiff to show good cause why his claims should not be dismissed for failure to state a claim. This matter is before the Court on Plaintiff's response (Doc. 20).

The facts alleged in Plaintiff's Amended Complaint are set forth in detail in the Court's MOSC II. In summary, Plaintiff claims "medical negligence" based on his medical care at USPL. (Doc. 10, at 3.) Plaintiff names Health Service Administrator J. Revier and Health Service Administrator P. Viscon as defendants. *Id*. at 1–2. Plaintiff seeks $5 million in compensatory damages. *Id*. at 5.

Plaintiff claims that in August 2021, he returned to USPL from St. Luke's Hospital, where he received his diagnosis. *Id*. at 6–7. When he returned to USPL, he spoke to AHSA P. Viscon and was told that there was nothing medical staff could provide for Plaintiff and that Plaintiff would have to deal with his issues on his own until he was transferred to another facility. *Id*. Plaintiff spoke to the Warden about Plaintiff's conversation with Viscon, and was referred to HSA J. Revier, who supported her medical staff's position with respect to Plaintiff's pleas for medical attention. *Id*.

In the MOSC II, the Court set forth in detail the medical care Plaintiff received while housed at USPL. When Plaintiff returned to USPL from St. Luke's Hospital in June 2021, Dr. Clark and other providers had regular follow ups with Plaintiff and monitored his conditions. Dr. Clark adjusted the dosing of Plaintiff's myasthenia gravis medication on two occasions based on Plaintiff's subjective statements about its effectiveness. Plaintiff was also sent out into the community for his regular IV immunoglobulin treatments.

Plaintiff's Amended Complaint only names the two Health Service Administrators as defendants. The Report provides that HSAs do not typically provide clinical treatment of inmate patients. (Doc. 13–1, at 17.) "The positions are supervisory and managerial and focus on staffing, procurement, and the overall administration of the department (e.g., budgeting, supply, facilities, contracting)." *Id.*; Exhibit 6, BOP Program Statement 6010.05, Health Services Administration, pp. 7–10.

Plaintiff filed a response to the MOSC II, titled "RESPONSE TO CLAIM OF MEDICAL NEGLIGENCE" (Doc. 20). Plaintiff argues in the response that the Bureau of Prisons Patient Care Program Statement was violated and the care he received was not "within the recognized standards of care." (Doc. 20, at 1.) Plaintiff claims that medical staff dismissed his condition without conducting a proper examination. *Id*. Plaintiff insists that "negligence and dismissiveness led to a delay in diagnosis and treatment of [Plaintiff's] condition." *Id*. Plaintiff states that he is "committed to this case and confident in the validity of the claim of medical negligence." *Id*. at 2.

The Court finds that Plaintiff's response fails to show good cause why his claims should not be dismissed for the reasons set forth in the MOSC II. The Court cautioned Plaintiff in the MOSC and MOSC II that negligence is insufficient to state a constitutional violation. The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

The Tenth Circuit recently recognized the Supreme Court's decision in *Carlson v. Green*, 446 U.S. 14 (1980), where the Supreme Court implied a damages action for a federal prisoner's

inadequate-care claim under the Eighth Amendment. *Noe v. United States Gov't*, 2023 WL 8868491, at *2 (10th Cir. Dec. 22, 2023). The Tenth Circuit in *Noe* stated that:

> However, the Supreme Court has since "emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert*, 596 U.S. at 491 (internal quotation marks omitted). Accordingly, the Court eventually settled on a two-step analysis of proposed *Bivens* claims. At step one, a court has to consider "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* at 492 (brackets omitted) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). And at step two, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.' " *Id.* (quoting *Abbasi*, 582 U.S. at 136).
>
> Noe argues that his *Bivens* claim is cognizable because the factual context of his case is like the factual context in *Carlson*, and factual similarity is sufficient to permit a *Bivens* claims to proceed regardless of whether a plaintiff has a meaningful alternative remedy. Noe also argues that the BOP's Administrative Remedy Program (ARP) is not a meaningful alternative to a civil action. Because the district court dismissed the *Bivens* claim with prejudice for failure to state a claim for relief, our review is de novo. *See Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014).
>
> We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two. In *Silva*, we observed that *Egbert* "appeared to alter the existing two-step *Bivens* framework by stating that 'those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.' " 45 F.4th at 1139 (quoting *Egbert*, 596 U.S. at 492). And we viewed "the key takeaway from *Egbert*" as being "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs.' " 45 F.4th at 1141 (quoting *Egbert*, 596 U.S. at 494) (emphasis and brackets in *Silva*). We concluded that, in light of

> Supreme Court precedent, "the [ARP] is an adequate 'means through which allegedly unconstitutional actions can be brought to the attention of the BOP and prevented from recurring.' " *Id.* (ellipsis omitted) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). And " '[b]ecause *Bivens* is concerned solely with deterring the unconstitutional acts of individual officers,' " we determined that "the availability of the [ARP] offers an independently sufficient ground to foreclose [a] *Bivens* claim" brought by a federal prisoner. *Id.* (quoting *Egbert*, 596 U.S. at 498). []
>
> Read together, *Egbert* and *Silva* direct that where the government has provided an alternative remedy, a court generally should not recognize a *Bivens* claim even if the factual context is not meaningfully different from that in *Bivens*, *Davis*, or *Carlson*. And here, the ARP, which *Silva* says is an adequate alternative remedy, is available to Noe. Thus, Noe's *Bivens* claim is, as the district court concluded, not cognizable.
>
> As Noe points out, at least one district court (outside the Tenth Circuit) has said that if the context is not meaningfully different from *Bivens*, *Davis*, or *Passman*, the analysis ends there, and the *Bivens* claims can proceed without the step-two inquiry into whether an adequate alternative remedy exists. *See Kennedy v. Massachusetts*, 643 F. Supp. 3d 253, 259 (D. Mass. 2022) ("[B]ecause this court is not fashioning a new *Bivens* context, the Court need not consider alternative remedial structures."). [] But precedential decisions of this court bind later panels unless there has been "en banc reconsideration or a superseding contrary decision of the U.S. Supreme Court." *United States v. Ensminger*, 174 F.3d 1143, 1147 (10th Cir. 1999) (internal quotation marks omitted). Because neither of those conditions is satisfied, we are bound by *Silva*'s interpretation of *Egbert*.

*Id*. at *2–3 (footnotes omitted).[1]

---

[1] The Tenth Circuit noted in footnotes 3 and 4 that:

In *Silva*, we noted that *Egbert* did not overrule *Abbasi* and that there was some tension between *Abbasi*'s two-step approach and *Egbert*'s apparent collapsing of those two steps into one. *See* 45 F.4th at 1139 & n.4. But we "decline[d] to address or resolve any [such] tension . . . because it [was] not necessary to dispose of the appeal before us." *Id.* Likewise, here, we may decide this appeal without resolving any tension between *Abbasi* and *Egbert* given our reliance on *Silva*'s interpretation of *Egbert*.

Noe relies on another case taking the same approach, *Ibuado v. Federal Prison Atwater*, No. 1:22-cv-00651, 2022 WL 16811880, at *4 (E.D. Cal. Nov. 8, 2022) (unpublished), but that decision—a magistrate judge's

Based on the reasoning set forth in the Court's MOSC II and the recent Tenth Circuit opinion in *Noe*, the Court finds that Plaintiff's Amended Complaint fails to state a claim for relief under *Bivens*.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated January 5, 2024, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

recommendation—was vacated by the magistrate judge before the district court ever ruled on it, *see* 2023 WL 159568, at *1 (E.D. Cal. Jan. 11th, 2023) (unpublished).